# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY WALKER, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>KEURIG DR PEPPER INC.,<br><br>        Defendant. | Case No. 2:22-cv-05557-MKB-SIL<br><br>Hon. MARGO K. BRODIE<br><br>**DEFENDANT KEURIG DR PEPPER INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT** |

Pieter Van Tol
**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, NY 10017
Telephone: +1 212 909 0661
Facsimile: +1 212 918 3100
pieter.vantol@hoganlovells.com

Lauren S. Colton (*Pro Hac Vice*)
Marc A. Marinaccio (*Pro Hac Vice*)
**HOGAN LOVELLS US LLP**
100 International Drive, Suite 2000
Baltimore, MD 21202
Telephone: +1 410 659 2700
Facsimile: +1 410 659 2701
lauren.colton@hoganlovells.com
marc.marinaccio@hoganlovells.com

***Attorneys for Defendant KEURIG DR PEPPER INC.***

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................ 3

        A.      Plaintiff's Complaint................................................................................ 3

        B.      PFAS Are Ubiquitous Environmental Contaminants ................................ 4

III.    ARGUMENT ...................................................................................................... 7

        A.      The Court Lacks Personal Jurisdiction Over KDP ................................... 7

        B.      Plaintiff Lacks Article III Standing........................................................... 8

                1)      Plaintiff Fails to Plausibly Allege the Presence of PFAS in Any of the
                        Products....................................................................................... 9

                2)      Plaintiff Fails to Allege the Presence of PFAS in Any Product He
                        Purchased .................................................................................. 10

                3)      Plaintiff Lacks Standing to Assert Claims for Products He Did Not
                        Purchase .................................................................................... 11

                4)      Plaintiff Has Failed to Plead An Economic Injury ........................ 12

        C.      Plaintiff Fails to Plead an Actionable Misrepresentation or Omission................... 15

                1)      Plaintiff Fails to Identify an Affirmative Misrepresentation Capable of
                        Misleading a Reasonable Consumer .............................................. 15

                2)      Plaintiff Fails to Plead an Actionable Omission ............................. 18

                3)      Plaintiff Fails to Plead Causation or Reliance ............................... 19

        D.      Plaintiff's Claims Are Preempted by Federal Law and Hinge on Issues
                Within the Primary Jurisdiction of the FDA ........................................... 21

        E.      Certain Claims Fail for Additional, Independent Reasons ....................... 23

                1)      Magnuson-Moss Warranty Act..................................................... 23

                2)      Fraud and Constructive Fraud...................................................... 24

                3)      Unjust Enrichment ...................................................................... 24

F. In the Alternative, the Court Should Dismiss the Nationwide Class Allegations ............................................................................................... 24

IV. CONCLUSION ..................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Dev. Group, LLC v. Island Robots of Florida*,
   No. 17CV3223NGGPK, 2019 WL 5790265 (E.D.N.Y. Oct. 4, 2019)...................................19

*Apace Commc'ns, Ltd. v. Burke*,
   522 F. Supp. 2d 509 (W.D.N.Y. 2007) ...................................................................................24

*Axon v. Citrus World, Inc.*,
   354 F. Supp. 3d 170 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat.
   Growers, Inc.*, 813 Fed. Appx. 701 (2d Cir. 2020).........................................................15, 17

*Axon v. Florida's Nat. Growers, Inc.*,
   813 Fed. Appx. 701 (2d Cir. 2020)...................................................................................15, 16

*Barreto v. Westbrae Nat., Inc.*,
   518 F. Supp. 3d 795 (S.D.N.Y. 2021)....................................................................................24

*Baur v. Veneman*,
   352 F.3d 625 (2d Cir. 2003)......................................................................................................8

*Bayne v. Target Corp.*,
   630 F. Supp. 3d 544 (S.D.N.Y. 2022)....................................................................................24

*Bedson v. BioSteel Sports Nutrition Inc.*,
   No. 1:23-cv-620 (E.D.N.Y. Jan. 27, 2023) .............................................................................23

*In re Beech-Nut Nutrition Co. Baby Food Litig.*,
   No. 1:21-CV-133, 2023 WL 350818 (N.D.N.Y. Jan. 19, 2023) ......................................22, 23

*Bowen v. Energizer Holdings, Inc.*,
   No. CV214356MWFAGRX, 2023 WL 1786731 (C.D. Cal. Jan. 5, 2023)............................10

*Boysen v. Walgreen Co.*,
   No. C 11-06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012) ..................................13, 14

*Bristol-Myers Squibb Co. v. Super. Ct.*
   137 S. Ct. 1773 (2017)......................................................................................................24, 25

*Brown v. Coty, Inc.*,
   No. 22-CV-2696, 2023 WL 2691581 (S.D.N.Y. Mar. 29, 2023) ................................... *passim*

*Bynum v. Family Dollar Stores, Inc.*,
   592 F. Supp. 3d 304 (S.D.N.Y. 2022)....................................................................................24

*Carpenter v. PetSmart, Inc.*,
    441 F. Supp. 3d 1028 (S.D. Cal. 2020) .................................................................25

*Catalano v. MarineMax*,
    590 F. Supp. 3d 487 (E.D.N.Y. 2022) ...................................................................23

*Chizniak v. CertainTeed Corp.*,
    No. 1:17-CV-1075 (FJS) (ATB), 2020 WL 495129 (N.D.N.Y. Jan. 30, 2020) ....................25

*Chufen Chen v. Dunkin' Brands, Inc.*,
    954 F.3d 492 (2d Cir. 2020) ...........................................................................8, 15

*Chufen Chen v. Dunkin' Brands, Inc.*,
    No. 17CV3808CBARER, 2018 WL 9346682 (E.D.N.Y. Sept. 17, 2018),
    *aff'd*, 954 F.3d 492 (2d Cir. 2020) .................................................................25

*Chung v. Igloo Prod. Corp.*,
    No. 20-CV-4926 (MKB), 2022 WL 2657350 (E.D.N.Y. July 8, 2022) .............4, 12, 14, 24

*Colella v. Atkins Nutritionals, Inc.*,
    348 F. Supp. 3d 120 (E.D.N.Y. 2018) ...................................................................14

*Dalewitz v. Procter & Gamble Co.*,
    No. 7:22-CV-07323 (NSR), 2023 WL 6215329 (S.D.N.Y. Sept. 22, 2023) ............................1

*In re Dental Supplies Antitrust Litig.*,
    No. 16CIV696BMCGRB, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017)............................25

*Devey v. Big Lots, Inc.*,
    635 F. Supp. 3d 205 (Oct. 12, 2022).................................................................20, 21

*DiMuro v. Clinique Lab'ys, LLC*,
    572 F. App'x 27 (2d Cir. 2014) ..........................................................................12

*Effinger v. Ancient Organics LLC*,
    No. 22-CV-03596-RS, 2023 WL 2214168 (N.D. Cal. Feb. 24, 2023) ...................................11

*Ellis v. Tribune Television Co.*,
    443 F.3d 71 (2d Cir. 2006)...............................................................................22

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)..............................................................................15

*Floyd v. Am. Honda Motor Co.*,
    966 F.3d 1027 (9th Cir. 2020) ...........................................................................23

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
    No. 12-MD-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)...................................23, 24

*In re Fruit Juice Prod. Mktg. & Sales Pracs. Litig.*,
   831 F. Supp. 2d 507 (D. Mass. 2011) ..............................................................13, 14

*Gaminde v. Lang Pharma Nutrition, Inc.*,
   No. 1:18-CV-300, 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ..........................10

*Gazzillo v. Ply Gem Indus., Inc.*,
   No. 117CV1077MADCFH, 2018 WL 5253050 (N.D.N.Y. Oct. 22, 2018)..........................25

*In re Gen. Mills Glyphosate Litig.*,
   No. CV 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017)..............................17

*George v. Starbucks Corp.*,
   No. 19-6185, 2020 WL 6802955 (S.D.N.Y. Nov. 19, 2020), *aff'd*, 857 F.
   App'x 705 (2d Cir. 2021)...............................................................17

*GMO Free USA v. The Procter & Gamble Company*,
   No. 2022-CA-4128B (D.C. Super. Ct. July 3, 2023)....................................1

*Harris v. Pfizer Inc.*,
   586 F. Supp. 3d 231 (S.D.N.Y. 2022)...................................................19

*Harris v. U.S. Secret Serv.*,
   605 F. Supp. 3d 410 (N.D.N.Y. 2022) .................................................5

*Hawyuan Yu v. Dr Pepper Snapple Group, Inc.*,
   No. 18 CV-06664-BLF, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) ..............17, 19

*Hernandez v. The Wonderful Company LLC*,
   No. 1:23-cv-1242 (S.D.N.Y. Feb. 14, 2023)...........................................23

*Hicks v. L'Oreal USA Inc.*,
   No: 1:22-cv-01989-JPC, 2023 WL 6386847 (S.D.N.Y. Sept. 30, 2023) ...........1, 10

*Izquierdo v. Mondelez Int'l, Inc.*,
   No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ................14

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab.
   Litig.*,
   903 F.3d 278 (3d Cir. 2018)...........................................................12

*Kelly v. Beliv LLC*,
   640 F. Supp. 3d 286 (S.D.N.Y. 2022)..................................................23

*Kyszenia v. Ricoh USA, Inc.*,
   583 F. Supp. 3d 350 (E.D.N.Y. 2022) .................................................20

*Lurenz v. The Coca-Cola Company*,
No. 7:22-cv-10941 (S.D.N.Y. Dec. 28, 2022) ........................................................23

*Maddox v. Bank of New York Mellon Tr. Co.*, N.A.
19 F.4th 58 (2d Cir. 2021) ...............................................................................8

*Monbo v. Nathan*,
623 F. Supp. 3d 56 (E.D.N.Y. 2022) .................................................................8

*Myers v. Wakefern Food Corp.*,
No. 20 CIV. 8470 (NSR), 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022)....................9

*Oden v. Boston Sci. Corp.*,
330 F. Supp. 3d 877 (E.D.N.Y. 2018) ..............................................................20

*Onaka v. Shiseido Americas Corp.*,
No. 21-CV-10665-PAC, 2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023)..................1, 9, 10, 11

*Palmer v. Amazon.com, Inc.*,
51 F.4th 491 (2d Cir. 2022) ...........................................................................21

*Parks v. Ainsworth Pet Nutrition, LLC*,
No. 18 CIV. 6936 (LLS), 2020 WL 832863 (S.D.N.Y. Feb. 20, 2020) ...............17, 19

*Pels v. Keurig Dr. Pepper, Inc.*,
No. 19-CV-03052-SI, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) .....................10

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
588 F. Supp. 2d 527 (S.D.N.Y. 2008).............................................................21

*Reiter v. Cooper*,
507 U.S. 258 (1993).......................................................................................22

*Richburg v. Conagra Brands, Inc.*,
No. 22 CV 2420, 2023 WL 1818561 (N.D. Ill. Feb. 8, 2023).....................1, 13, 16

*Ruiz v. ConAgra Brands, Inc.*,
No. 1:22-CV-02421 (N.D. Ill. Feb. 8, 2023) .....................................................1

*Sanders v. WB Kirby Hill LLC*,
No. CV 16-4596, 2017 WL 5495365 (E.D.N.Y. Nov. 14, 2017).........................24

*Santiful v. Wegmans Food Mkts. Inc.*,
No. 20-CV-2933 (NSR), 2022 WL 268955 (S.D.N.Y. Jan. 28, 2022)...................9

*Smith v. Abbott Lab'ys Inc.*,
No. 20-CV-5684(EK)(MMH), 2023 WL 6121798 (E.D.N.Y. Sept. 19, 2023)........24

*Smith v. Adidas Am., Inc.*,
    No. 6:22-CV-788 (BKS/ML), 2023 WL 5672576 (N.D.N.Y. Sept. 1, 2023) ........................24

*Solis v. Coty, Inc.*,
    No. 22-cv-0400, 2023 WL 2394640 (S.D. Cal. Mar. 7, 2023) ..................................................1

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016), *as revised* (May 24, 2016) .......................................................................8

*Tansey v. Cochlear Ltd.*,
    No. 13-CV-4628 SJF, 2014 WL 4829453 (E.D.N.Y. Sept. 26, 2014) ....................................8

*Toribio v. The Kraft Heinz Company*,
    No. 1:22-cv-6639 (N.D. Ill. Nov. 29, 2022) ...........................................................................23

*Trisvan v. Burger King Corp.*,
    No. 19-CV-6396 (MKB), 2021 WL 1193531 (E.D.N.Y. Mar. 30, 2021) ..............................23

*Turnipseed v. Simply Orange Juice Co.*,
    No. 20 CIV. 8677 (NSR), 2022 WL 657413 (S.D.N.Y. Mar. 4, 2022) ....................................9

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    519 F. Supp. 3d 154 (S.D.N.Y. 2021) ....................................................................................15

*Walden v. Fiore*,
    571 U.S. 277 (2014) .................................................................................................................8

*Warren v. Coca-Cola Co.*,
    No. 22-CV-6907 (CS), 2023 WL 3055196 (S.D.N.Y. Apr. 21, 2023) ........................15, 18, 24

*Warren v. Whole Foods Mkt. Group, Inc.*,
    574 F. Supp. 3d 102 (E.D.N.Y. 2021) ....................................................................................18

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
    127 F. Supp. 3d 156 (S.D.N.Y. 2015) ......................................................................................5

*Womack v. EVOL Nutrition Assocs., Inc.*,
    No. 21-332, 2021 WL 5906340 (N.D.N.Y. Dec. 14, 2021) ....................................................19

*Wynn v. Topco Assocs., LLC*,
    No. 19-CV-11104 (RA), 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ....................................18

*Yih v. Taiwan Semiconductor Mfg. Co.*,
    815 F. App'x 571 (2d Cir. 2020) .............................................................................................8

**Statutes & Other Authorities**

21 U.S.C. § 343-1(a) ......................................................................................................................21

21 U.S.C. § 343(a)(1) ........................................................................22

21 C.F.R. § 100.1(c)(4) .....................................................................21

21 C.F.R. § 101.100(a)(3) ...........................................................16, 21

40 C.F.R. pts. 141-42 ........................................................................7

66 C.F.R. § 7006 (2001) ....................................................................7

88 Fed. Reg. 18638 ...........................................................................7

Fed. R. Civ. P. § 12(b)(1) .................................................................8

N.Y. Comp. Codes R. & Regs. tit. 10, § 5-1.52 ............................7

# I.    **INTRODUCTION**

In this consumer class action, Plaintiff contends that Keurig Dr Pepper Inc. ("KDP") made actionable misrepresentations by marketing various Nantucket Nectar and Snapple Fruit Juice products (the "Products")[1] as containing "All Natural Ingredients" when, according to Plaintiff's "independent testing," certain samples allegedly contain unspecified levels of unidentified per- and polyfluoralkyl substances ("PFAS"), a large class of manmade chemicals that are now found throughout the world in the environment, drinking water and food sources, including fruit. Plaintiff does not allege that KDP added PFAS to the Products as an "ingredient"; nor does he allege that KDP made any direct statements about PFAS.  Rather, he argues that consumers might construe accurate statements that the Products are comprised of "all natural ingredients" – *i.e.*, water and fruit – as a guarantee that every bottle will make it to the consumer completely free of trace levels of common environmental contaminants.  That untenable position stretches the bounds of liability beyond reason.  And, like most others of its kind, the Complaint fails to plausibly allege that any PFAS are present in the Products Plaintiff actually purchased, much less at levels or types that are "harmful" to any consumer.  This Court should dismiss and join the growing number of courts that have rejected similarly vague and speculative PFAS allegations at the pleadings stage.[2]

***First***, the Court lacks personal jurisdiction over KDP.  KDP is a foreign corporation with no presence in New York.  KDP does not manufacture or sell the Products; nor does KDP market

---

[1]  The Products identified in the Amended Complaint (ECF No. 10) include eight Nantucket Nectar juices – Orchard Apple, Pineapple Orange Banana, Pomegranate Cherry, Pomegranate Pear, Big Cranberry, Orange Mango, Island Orange, and Pineapple Orange Guava – and Snapple Fruit Punch.  (Compl. ¶ 1 n.1).

[2]  *See Brown v. Coty, Inc.*, No. 22-CV-2696, 2023 WL 2691581, at *5 (S.D.N.Y. Mar. 29, 2023); *Onaka v. Shiseido Americas Corp.*, No. 21-CV-10665-PAC, 2023 WL 2663877, at *4 (S.D.N.Y. Mar. 28, 2023); *Richburg v. Conagra Brands, Inc.*, No. 22 CV 2420, 2023 WL 1818561, at *7 (N.D. Ill. Feb. 8, 2023); *Ruiz v. ConAgra Brands, Inc.*, No. 1:22-CV-02421 (N.D. Ill. Feb. 8, 2023); *Solis v. Coty, Inc.*, No. 22-cv-0400, 2023 WL 2394640, at *10 (S.D. Cal. Mar. 7, 2023); *GMO Free USA v. The Procter & Gamble Company*, No. 2022-CA-4128B (D.C. Super. Ct. July 3, 2023); *Dalewitz v. Procter & Gamble Co.*, No. 7:22-CV-07323 (NSR), 2023 WL 6215329, at *4 (S.D.N.Y. Sept. 22, 2023); *Hicks v. L'Oreal USA Inc.*, No: 1:22-cv-01989-JPC, 2023 WL 6386847, at *10 (S.D.N.Y. Sept. 30, 2023).

the Products in New York.  The Products are marketed and sold by a separate corporate entity.

**Second**, Plaintiff lacks Article III standing because he fails to plausibly allege that any of the nine Products identified in the Complaint actually contains PFAS or that he purchased a PFAS-containing Product.  All of Plaintiff's claims are premised on his contention that the nine different Products listed in the Complaint each contain "harmful" chemicals, yet the Complaint does not answer the simple questions of what Products Plaintiff purchased, what Products he tested, whether he actually tested any of the specific bottles he purchased, whether the testing was reasonably near in time to his purchases, or what specific PFAS substance purportedly was found in each Product in what levels.  Nor does he plead any facts to support his theories of economic injury.

**Third**, Plaintiff fails to identify an actionable misrepresentation or omission.  A reasonable consumer would not interpret the Products' "All Natural Ingredients" representations as a guarantee that every bottle is 100% free of environmental contaminants.  Plaintiff does not (and cannot) plausibly allege that PFAS are an "ingredient" added to the Products or that a reasonable consumer would interpret PFAS – which serve no purpose in the making of a juice product – as "ingredients."  As to his omission theory, Plaintiff identifies no law or regulation requiring KDP to disclose the presence of PFAS, because none exists.  Nor does he plead – beyond conclusory statements – that KDP knew of the purported presence of PFAS in the Products, much less that KDP had exclusive knowledge or that the presence of trace levels of environmental contaminants would be material to a consumer's purchasing decision so as to give rise to a duty to disclose.

**Fourth**, Plaintiff's claims are preempted because they seek to impose labeling obligations that differ from those imposed by federal law; in the alternative, they should be dismissed under the doctrine of primary jurisdiction because they raise scientific issues within the exclusive purview of the U.S. Food and Drug Administration ("FDA").  **Fifth,** several claims fail for

additional, independent reasons. Plaintiff's Magnuson Moss Warranty Act ("MMWA") claim fails to plead an underlying breach of warranty and fails to meet the statutory requirement of naming 100 plaintiffs. His fraud claims do not allege scienter or intent beyond conclusory generalizations. His unjust enrichment claim fails because it is entirely duplicative of his other deficient claims.

The entire Complaint should be dismissed with prejudice. In the alternative, the Court should dismiss Plaintiff's nationwide class allegations for lack of personal jurisdiction as to Products purchased outside of New York.

## II.     BACKGROUND

### A.     Plaintiff's Complaint

Plaintiff Timothy Walker, a New York resident, alleges that he purchased "various different flavors of the Products" "numerous times" "during the applicable statute of limitations period." (Compl. ¶ 91). He does not identify any specific Product he purchased other than the Nantucket Nectar Orchard Apple Product (*id.*), nor does he specify when he purchased any of the Products. Plaintiff contends that, prior to one purchase of an unidentified Product, he reviewed unidentified "labeling, packaging and marketing materials" for that Product, and as a result he understood that the Product "was free of harmful, man-made chemicals like PFAS." (*Id.* ¶ 92).

Plaintiff alleges that he "sought independent third-party testing to determine whether the Products contained PFAS chemicals." (*Id.* ¶ 47). Plaintiff does not indicate which of the Products were tested, whether the "independent" lab tested his own purchases, or when the testing was conducted. He also claims that his testing detected "material levels of numerous PFAS chemicals in the Products." (*Id.* ¶ 49). However, he does not identify what levels of what specific PFAS purportedly were detected in each Product or whether those detections were consistent across all samples tested, and does not provide any other information about his testing. He does allege that two specific PFAS – PFOA and PFOS – were found in "some Products," (*id.* ¶¶ 54-55), but he

does not identify which Products or the specific levels allegedly found.

Plaintiff contends that representations on the Nantucket Nectar Products' labeling that they contain "All Natural Ingredients" is false or misleading or otherwise inconsistent with the purported presence of PFAS. (*Id.* ¶ 24). Plaintiff also points to a similar statement on the Snapple Fruit Punch Product's label, as well as a statement that formerly appeared on that Product's label, at some unspecified time, that the Product was "Made from the Best Stuff on Earth," (*id.* ¶¶ 26-28), although he does not allege that he ever purchased a Snapple Product or that he viewed or relied on either of those statements on its label. Finally, Plaintiff notes that the Products' labels contain "short and sweet" ingredient lists that do not mention PFAS. (*Id.* ¶ 29).

### B.     PFAS Are Ubiquitous Environmental Contaminants

PFAS are a "large group" of synthetic chemicals that have been used in industrial and consumer products since the 1940s. (Ex. 1).[3] There are thousands of different PFAS, some of which have been more widely used and studied than others, but one common characteristic is that many PFAS are now found in "low levels" throughout the environment, including in water, air, and soil. (Ex. 2).[4] The FDA has explained that "PFAS can enter foods through environmental contamination" and that "the use of soil, water, or biosolids contaminated with PFAS to grow crops . . . can lead to PFAS entering the food supply." (Ex. 3).[5] Government agencies do not

---

[3]   *PFAS FAQs,* AGENCY FOR TOXIC SUBSTANCES AND DISEASE REGISTRY (ATSDR), available at: https://www.atsdr.cdc.gov/pfas/resources/pfas-faqs.html, is attached as Exhibit 1 to the Declaration of Marc A. Marinaccio filed contemporaneously herewith (the "Marinaccio Declaration"). This document is incorporated by reference in the Complaint (Compl. ¶ 33 n. 10), and the Court may take judicial notice of it and other exhibits to this motion that are referenced in the Complaint. *See, e.g., Chung v. Igloo Prod. Corp.*, No. 20-CV-4926 (MKB), 2022 WL 2657350, at *1 (E.D.N.Y. July 8, 2022) (Brodie, J.).

[4]   *PFAS Explained,* ENVIRONMENTAL PROTECTION AGENCY (EPA), available at: https://www.epa.gov/pfas/pfas-explained, is attached as Exhibit 2 to the Marinaccio Declaration. (*See* Compl. ¶ 32 n. 9).

[5]   *Testing Food for PFAS and Assessing Dietary Exposure*, FDA, available at: https://www.fda.gov/food/process-contaminants-food/testing-food-pfas-and-assessing-dietary-exposure is attached as Exhibit 3 to the Marinaccio Declaration. The Court can take judicial notice because this document is publicly available on a government website and contains facts "capable of accurate and ready

"fully understand" critical questions about PFAS, including how to best detect and measure PFAS and whether and to what extent certain PFAS chemicals are harmful to humans.  (Ex. 2).

Despite these uncertainties, Plaintiff alleges consumer deception based solely on the purported existence of unspecified amounts of unidentified PFAS in the Products.  Importantly, ***Plaintiffs' own sources*** confirm that PFAS are "ubiquitous" in the environment and that the presence of trace amounts of PFAS is ***unavoidable in consumer products*** today:

- "Because of their widespread use and their persistence in the environment, many PFAS are found in the blood of people and animals all over the world and are present at low levels in a variety of food products and in the environment."  (Ex. 2).

- PFAS are "widespread in the environment" and are "found in people, wildlife, and fish all over the world."  Because PFAS are "present at low levels" in some food products and the environment, "you cannot prevent PFAS exposure altogether."  (Ex. 1).

- "PFAS contamination may be in drinking water, food, indoor dust, some consumer products, and workplaces."  (Ex. 1).

- "Experts say [PFAS] . . . are impossible to avoid.  . . . ***You cannot avoid [PFAS] as they are ubiquitous in products and the environment***."  (Ex. 4 (emphasis added)).[6]

Those sources contradict Plaintiff's assertion that consumers would not expect that a product comprised of natural ingredients like water and fruit could contain some level of common environmental contaminants like PFAS.

Plaintiff's cited sources also contradict his contention that the purported presence of trace levels of these unavoidable contaminants is "harmful."  (Compl. ¶¶ 2, 6, 32, 35, 89, 92).  Those sources state that it is challenging to assess the potential human health risks substance-by-

---

determination."  *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015); *Harris v. U.S. Secret Serv.*, 605 F. Supp. 3d 410, 413 (N.D.N.Y. 2022).
[6]  *How to Reduce Your Exposure to PFAS: the Hidden Toxic 'Forever Chemicals,'* HEALTHLINE, available at: https://www.healthline.com/health-news/how-to-reduce-your-exposure-to-pfas-the-hidden-toxic-forever-chemicals, is attached as Exhibit 4 to the Marinaccio Declaration.  (*See* Compl. ¶ 43 n. 19).

substance.  (*See* Ex. 2; Ex. 5).[7]  Plaintiff references U.S. Environmental Protection Agency (EPA) advisories, but the EPA acknowledges that there "are thousands of PFAS with potentially varying effects and toxicity levels," (Ex. 6),[8] and it is still working to determine "[h]ow harmful PFAS are to people and the environment."  (Ex. 2).  Plaintiff's sources simply do not support his contention that exposure to PFAS at "near zero" levels can cause negative health effects.  (Compl. ¶ 52). Instead, they make clear that only "high levels" of exposure to "certain" PFAS "may" be harmful. (Ex. 1; Ex. 5).  None of the scientific studies or regulatory authorities cited in the Complaint stand for the proposition that ***all*** PFAS are harmful, let alone at trace exposure levels.

Plaintiff, of course, does not identify what levels of which specific PFAS he purportedly found in any particular Product.  Instead, he vaguely claims his testing detected "material levels" of "numerous PFAS" in unidentified Products, without any explanation as to how any detected level of any particular PFAS is "harmful."  (*Id.* ¶ 49).  He does allege that he found two specific PFAS – PFOA and PFOS – in "some Products," (*id.* ¶ 55), but his allegations make clear that those purported detections were at trace levels far below any existing or proposed regulatory standard, even for drinking water.  Specifically, Plaintiff alleges that his testing detected PFOA and PFOS "at levels more than 100 times the EPA's recommended [lifetime health advisory] levels [for drinking water]" of 0.004 parts per trillion for PFOA and 0.02 parts per trillion for PFOS.  (*Id.* ¶¶ 54-55).  In other words, at most, Plaintiff claims to have found ***a fraction of a part per trillion*** of PFOA, and "more than" ***two parts per trillion*** of PFOS in "some" (but not all) of the Products.

As an initial matter, the EPA's lifetime advisory levels for drinking water are irrelevant

---

[7] *Emerging chemical risks in Europe – 'PFAS,'* EUROPEAN ENVIRONMENTAL AGENCY (EEA), available at https://www.eea.europa.eu/publications/emerging-chemical-risks-in-europe, is attached as Exhibit 5 to the Marinaccio Declaration.  (*See* Compl. ¶ 38, n. 14).

[8] *Our Current Understanding of the Human Health and Environmental Risks of PFAS*, EPA, available at: https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas,       is attached as Exhibit 6 to the Marinaccio Declaration.  (*See* Compl. ¶ 38, n. 13).

because: (i) those advisory levels are based on a "lifetime" of exposure to drinking water, rather than the occasional consumption of fruit juice;[9] (ii) they are non-enforceable, even as to drinking water; and (iii) the EPA imposes no requirements – advisory or otherwise – on juice manufacturers to limit or disclose PFAS.  Even if it was appropriate to apply drinking water standards to a juice product consumed far less frequently, Plaintiff ignores the actual, enforceable standards for PFOA and PFOS in drinking water.  New York's Maximum Contaminant Level (MCL) for both PFOA and PFOS is 10 parts per trillion – far higher than what Plaintiff purportedly found here – and the New York Department of Health has stated that "the risk for health effects if someone drinks water at or below the MCL is minimal."  (Ex. 7).[10]  Even the EPA's proposed National Primary Drinking Water Regulation – which the EPA has recommended as a legally enforceable limit, as opposed to the advisory levels cited by Plaintiff – allows up to *four* parts per trillion of PFOA and PFOS in drinking water.[11]  The idea that consumers would consider trace amounts of PFAS in fruit juice "material" when their drinking water contains far higher levels simply is not plausible.

## III.  ARGUMENT

### A.  The Court Lacks Personal Jurisdiction Over KDP

KDP is a Delaware corporation headquartered in Massachusetts and Texas.  (Compl. ¶ 12; Barrett Decl. ¶ 2).[12]  KDP's activities are directed, coordinated and controlled from Massachusetts and Texas, and it does not maintain any offices or employees in New York.  (Barrett Decl. ¶¶ 2-

---

[9]  The EPA estimates that people consume two liters of water per day.  66 C.F.R. § 7006 (2001).

[10]  *Center for Environmental Health: Public Water Systems and NYS Drinking Water Standards for PFAS and Other Emerging Contaminants*, NEW YORK STATE DEPARTMENT OF HEALTH, available at https://www.health.ny.gov/environmental/water/drinking/docs/water_supplier_fact_sheet_new_ mcls.pdf, is attached as Exhibit 7 to the Marinaccio Declaration and is judicially noticeable because it is publicly available on a government website (*see supra* n.5); *see also* N.Y. Comp. Codes R. & Regs. tit. 10, § 5-1.52.

[11]  Per- and Polyfluoroalkyl Substances National Primary Drinking Water Regulation, 88 Fed. Reg. 18638 (proposed Mar. 29, 2023) (to be codified at 40 C.F.R. pts. 141-42).

[12]  *See* Declaration of Janet Barrett, dated November 6, 2023 ("Barrett Decl."), filed herewith.

3). Plaintiff has not alleged any "exceptional" circumstances or "continuous and systemic" contacts that would render KDP "at home" in New York; thus, KDP is not subject to general jurisdiction here. *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 498 (2d Cir. 2020); *see also Monbo v. Nathan*, 623 F. Supp. 3d 56, 137 (E.D.N.Y. 2022) (Brodie, J.). The Court also lacks specific jurisdiction because Plaintiff's claims do not arise from contacts between KDP and New York. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014); *Monbo*, 623 F. Supp. 3d at 135. Contrary to Plaintiff's allegations, KDP does not manufacture, sell, or advertise the Products in New York or anywhere else. (Barrett Decl. ¶ 5).[13] The Products are manufactured, sold, and advertised by Mott's LLP, a separate legal entity. (*Id.* ¶ 6). Plaintiff does not allege facts to suggest that corporate formalities should be disregarded so as to allow the exercise of personal jurisdiction over KDP as a result of a separate entity's contacts with New York. *See, e.g.*, *Tansey v. Cochlear Ltd.*, No. 13-CV-4628 SJF, 2014 WL 4829453, at *4-5 (E.D.N.Y. Sept. 26, 2014).

## B.     Plaintiff Lacks Article III Standing

Article III requires that a plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). To survive a motion to dismiss under Rule 12(b)(1), Plaintiff must plausibly allege that he himself suffered an injury as a result of some defect in the Products. *See Maddox v. Bank of New York Mellon Tr. Co.*, *N.A.*, 19 F.4th 58, 65-66 (2d Cir. 2021); *Baur v. Veneman*, 352 F.3d 625, 636-37 (2d Cir. 2003). The complaint must "allege[] facts demonstrating it is at least plausible that plaintiff purchased a misbranded product." *Onaka*, 2023 WL 2663877, at *4;

---

[13] KDP lists the Products on its website, (Barrett Decl. ¶ 7), but "passively making information available to viewers on the internet does not constitute 'transacting business' in the forum state." *Monbo*, 623 F. Supp. 3d at 135; *see also Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571, 573 (2d Cir. 2020).

*Brown*, 2023 WL 2691581, at *5. Here Plaintiff fails to allege that ***any*** of the Products contain PFAS, let alone any Product he actually purchased.

1)    ***Plaintiff Fails to Plausibly Allege the Presence of PFAS in Any of the Products***

As a threshold matter, Plaintiff cannot meaningfully claim injury, and there can be no deceptive or fraudulent act regarding KDP's alleged sales of PFAS-containing Products, without a plausible basis to infer that KDP's Products ***actually contain*** PFAS. Plaintiff does not (and cannot) allege that KDP intentionally added PFAS to the Products, and his threadbare "independent testing" allegations do not satisfy Rule 12(b)'s plausibility pleading standard.

Plaintiff baldly alleges that he conducted independent, third-party testing in accordance with "industry standards" and "detected material levels of numerous PFAS in the Products," (Compl. ¶¶ 48-49), but the Complaint is silent regarding key testing details, including what specific Products Plaintiff tested, when or where the testing occurred, which lab conducted the testing, what standards were used, which specific PFAS analytes purportedly were detected (other than the PFOA and PFOS in "some" unidentified Products), the specific levels of PFAS purportedly detected, and why those levels are purportedly "material" and/or "concerning." Courts in this Circuit have found such threadbare testing allegations insufficient to allege that a challenged substance is present in a product. *See, e.g.*, *Turnipseed v. Simply Orange Juice Co.*, No. 20 CIV. 8677 (NSR), 2022 WL 657413, at *4 (S.D.N.Y. Mar. 4, 2022) (dismissing GBL claims based on vague testing allegations where plaintiff "fail[ed] to provide any details whatsoever about what this laboratory test entailed"); *Myers v. Wakefern Food Corp.*, No. 20 CIV. 8470 (NSR), 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022); *Santiful v. Wegmans Food Mkts. Inc.*, No. 20-CV-2933 (NSR), 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022).

### 2) **Plaintiff Fails to Allege the Presence of PFAS in Any Product He Purchased**

Even if Plaintiff's threadbare testing allegations were sufficient to plausibly suggest the presences of PFAS in some Products (they are not), he fails to plausibly allege that he ***actually purchased*** a PFAS-containing Product. The Southern District of New York recently addressed similarly deficient allegations in *Onaka*. In that case, the plaintiffs claimed economic injuries because defendant's cosmetics products purportedly contained PFAS despite representations that the products were "clean" and "free of harsh chemicals." 2023 WL 2663877, at *1. Although the plaintiffs alleged to have independently tested "each type of the Products they purchased," the court dismissed for lack of standing because they failed to allege that they "tested any of their own purchases for PFAS." *Id.* at 2, 4. The plaintiffs also failed to allege that the testing occurred "reasonably near in time" to their purchases. *Id.* at 4. Thus, it was "nothing more than a 'sheer possibility'" that plaintiffs' purchases contained PFAS. *Id.* Numerous other courts have dismissed for lack of standing on similar grounds. *See, e.g.*, *Hicks*, 2023 WL 6386847, at *8 ("exceedingly thin" testing allegations failed to plausibly plead that "PFAS was present in the Purchased Products in a 'systematic and routine' way"); *Brown*, 2023 WL 2691581, at *5 (plaintiff "has not alleged that the products she herself purchased contained PFAS such that she can allege an injury in fact"); *Bowen v. Energizer Holdings, Inc.*, No. CV214356MWFAGRX, 2023 WL 1786731, at *4 (C.D. Cal. Jan. 5, 2023) (plaintiff "does not allege that [testing] can be extrapolated across all of Defendants' products or to a specific batch which could have ended up in her purchased sunscreen"); *Pels v. Keurig Dr. Pepper Inc.*, No. 19-CV-03052-SI, 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) ("plaintiff has failed to plead a particularized injury by failing to plead the water ***he*** purchased contained violative arsenic levels"); *Gaminde v. Lang Pharma Nutrition, Inc.*, No. 1:18-CV-300 (GLS/DEP), 2019 WL 1338724, at *2 (N.D.N.Y. Mar. 25, 2019).

Plaintiff expects this Court to accept a hypothetical each of those courts summarily rejected – that results from "independent testing" of some unidentified Products can be extrapolated across all of the Products or to a specific Product Plaintiff purchased. Plaintiff does not identify which, if any, of the nine Products he purchased, other than Nantucket Nectar Orchard Apple, nor does he allege when he purchased any Product. (Compl. ¶ 91). He also does not allege that his vaguely-described testing actually detected PFAS in the Products *he purchased* – whichever Products those may be. (*Id.* ¶ 49).[14] Nor does he specify when his "independent testing" occurred relative to when he purchased any of the Products – he simply contends that it detected "material levels of numerous PFAS in the Products" at some unknown point in time. (*Id.* ¶¶ 47, 49). Plaintiff's "single allegation of independent testing is inadequate" to establish standing without, at the least, allegations that the testing occurred "reasonably near in time" to Plaintiff's own purchases. *Onaka*, 2023 WL 2663877, at *4. As in *Onaka*, it is nothing more than "sheer possibility" that Plaintiff actually purchased a PFAS-containing Product.

### 3) *Plaintiff Lacks Standing to Assert Claims for Products He Did Not Purchase*

Plaintiff likewise lacks standing to assert claims on behalf of class members for Products he did not purchase. Plaintiff alleges that he purchased the Nantucket Nectar Orchard Apple Product, but he does not allege which, if any, of the other eight Products he purchased. (Compl. ¶ 91). Although a plaintiff "may have standing to bring class claims with respect to a product she did not purchase if that product is sufficiently similar to the product the plaintiff purchased such

---

[14] Plaintiff also has not alleged *any* facts to suggest that the Products – beyond their labeling (Compl. ¶¶ 21, 31) – are similar. He does not allege, for example, that the Products contain the same ingredients, are manufactured in the same facility, or are uniformly manufactured in such a way that would lead to the presence of PFAS – much less similar levels – in all Products. It would be "improper to assume that each of these subtly different Products is like all the others" merely because the labels are similar. *Effinger v. Ancient Organics LLC*, No. 22-CV-03596-RS, 2023 WL 2214168, at *5 (N.D. Cal. Feb. 24, 2023).

that both products raise 'nearly identical' concerns," here Plaintiff does not allege that the Products are "sufficiently similar." *Brown*, 2023 WL 2691581, at *3 (citing *DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27, 29 (2d Cir. 2014)). Plaintiff claims that the Product labels all contain the same "all natural ingredient" representations, but he does not plausibly allege that they all contain PFAS, much less "at the same levels." *Brown*, 2023 WL 2691581, at *3.[15]

### 4) Plaintiff Has Failed to Plead an Economic Injury

Plaintiff also has failed to plead any concrete economic harm sufficient to confer standing under Article III. Plaintiff asserts two theories of injury – he claims he did not obtain the full value of the Products he purchased (the "benefit-of-the-bargain" theory), and that he would not have purchased the Products, or would have paid less for them, had he known that they purportedly contained trace levels of an environmental contaminant (the "price premium" theory). Neither theory is sufficient to plead a concrete injury for standing purposes here.

Courts throughout the country have rejected the "benefit-of-the-bargain" theory in cases involving trace levels of allegedly unsafe chemicals in consumer products where the plaintiff received a functioning product, that they consumed without incident, and failed to adequately allege that the purported presence of chemicals pose a substantial and credible risk of future harm. *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 293 (3d Cir. 2018). As one court explained in a recent decision rejecting a "benefit-of-the-bargain" theory in a case alleging that a "100% ingredients from natural sources" claim was false due to the purported presence of PFAS in a microwave popcorn:

> [P]laintiffs do not allege that defendant's microwave products failed to work as intended—for example, the complaints do not contain any indication that the

---
[15] This case is distinguishable from *Chung*, in which this Court found that a plaintiff had standing to sue for different models of a cooler he did not purchase, each of which was alleged to not function in accordance with their labeling. 2022 WL 2657350, at *6. Here, Plaintiff asserts claims for nine different products with different ingredients, each of which is not plausibly alleged to suffer from the same defect.

microwave popcorn products at issue did not pop correctly, or that plaintiffs were otherwise unable to consume the popcorn. Without such an allegation, the court is not persuaded that plaintiffs have established concrete injuries based on the benefit-of-the-bargain theory. As defendant argues, plaintiffs purchased popcorn and they received popcorn; they have offered only conclusory allegations to suggest that the products had diminished value.

*Richburg*, 2023 WL 1818561, at *4; *see also In re Fruit Juice Prod. Mktg. & Sales Pracs. Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) (no economic harm from lead in fruit juice, "considering the absence of any actual injury and the absence of any concrete allegations supporting concerns about the specific products' safety"); *Boysen v. Walgreen Co.*, No. C 11-06262 SI, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012) (same, where plaintiff failed to plausibly allege that the levels found in defendant's product tend to cause physical harm).

So too here. Although Plaintiff vaguely alleges that PFAS have been "associated" with negative health effects, (Compl. ¶¶ 7, 36, 96), he does not plausibly allege that he or any other consumer faces a credible or substantial threat of physical harm from the specific levels of the specific PFAS he claims to have found in the Products (whatever those may be). *See supra* Section II.B; *Boysen*, 2012 WL 2953069, at *7 (allegations of "significant health concerns associated with ingestion of lead or arsenic" insufficient; plaintiff must "expressly allege that the levels present in defendant's juice tend to cause physical harm"); *In re Fruit Juice Prods.*, 831 F. Supp. 2d at 511 (plaintiffs "have not claimed that any particular amount [of lead] in the products is dangerous, and have not alleged that any specific amount has caused actual injuries to any plaintiff"). Nor does Plaintiff's reference to the EPA's non-regulatory lifetime health advisory levels for PFOA and PFOS in drinking water plausibly allege a risk of harm. *See supra* Section II.B. *Boysen* rejected a similar argument, where the plaintiff sought to extrapolate drinking water standards to fruit juice but tellingly did not allege that the levels allegedly detected exceeded any relevant, enforceable regulations for the product at issue. 2012 WL 2953069, at *5-6. And, as explained in *In re Fruit*

*Juice Products*, "[t]he fact is that Plaintiff[ ] paid for fruit juice, and [he] received fruit juice, which [he] consumed without suffering harm. The products have not been recalled, have not caused any reported injuries, and do not fail to comply with any federal standards. The products had no diminished value due to the presence of the [contaminant]. Thus, Plaintiff[ ] received the benefit of the bargain, as a matter of law, when [he] purchased these products." 831 F. Supp. 2d at 512.

Plaintiff's "price premium" theory fares no better. While Plaintiff repeatedly argues that he paid a "premium," or paid more for the Products than he otherwise would have, "recit[ing] the word 'premium' multiple times in the[ ] Complaint does not make [his] injury any more cognizable." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016). Plaintiff fails to plead any *facts* to support his theory – he does not identify the price(s) he paid for the Products, name any comparable products with lower prices, or even allege that such products exist. *See, e.g.*, *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) ("[P]laintiff only conclusorily asserts that [defendant] charges a premium for its products and provides no facts regarding what the premium was, what price he paid for the products, or the price of non-premium products."); *Chung*, 2022 WL 2657350, at *10 ("Absent [price information about comparable products], Plaintiffs' allegation that [he] would not have paid a premium price for the Product and would have purchased other, less expensive coolers is an unsupported conclusory statement . . . ."). Plaintiff does not even allege whether *any* natural fruit juice products exist in the market that *do not* contain trace levels of PFAS contamination, much less provide any comparison of such products' pricing. Without some supporting allegations of fact, this Court cannot simply infer that the Products are worth less than Plaintiff paid for them; nor can it accept his bald contention that he would have paid less had he known about the purported presence of PFAS in unspecified levels that are not plausibly alleged to cause harm.

## C.  Plaintiff Fails to Plead an Actionable Misrepresentation or Omission

Plaintiff's claims must be dismissed because he fails to identify any deceptive statement or actionable omission likely to mislead a reasonable consumer, much less one that he saw or relied upon in purchasing the Products.  To state a claim under the GBL, a plaintiff must allege "(1) that the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Chufen Chen*, 954 F.3d at 500.  Likewise, without plausible allegations of deception, Plaintiff's remaining claims for violation of the MMWA, fraud, constructive fraud, unjust enrichment, and express warranty all must fail. *See Twohig v. Shop-Rite Supermarkets, Inc*., 519 F. Supp. 3d 154, 165 (S.D.N.Y. 2021) (dismissing claims for fraud, breach of warranty and unjust enrichment where the court had "already determined that Plaintiffs have failed to allege that the Product's labeling would be likely to deceive or mislead a reasonable consumer"); *Warren v. Coca-Cola Co*., No. 22-CV-6907 (CS), 2023 WL 3055196, at *8 (S.D.N.Y. Apr. 21, 2023); *Brown*, 2023 WL 2691581, at *2-3.

### 1)  Plaintiff Fails to Identify an Affirmative Misrepresentation Capable of Misleading a Reasonable Consumer

Plaintiff fails to plausibly allege that KDP made any deceptive statement likely to mislead a "reasonable consumer."  To do so, Plaintiff must allege that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Axon v. Citrus World, Inc*., 354 F. Supp. 3d 170, 182 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc*., 813 Fed. Appx. 701 (2d Cir. 2020) (quotations omitted).  Whether a reasonable consumer is likely to be misled is an "objective inquiry," and dismissal is appropriate at the pleadings stage "when the complaint fails to allege facts that state a plausible claim for relief." *Id.*; *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) ("It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement

would not have misled a reasonable consumer."). The Complaint fails to state a plausible claim for relief because no reasonable consumer would interpret "All Natural" representations regarding the Products' ***ingredients*** to mean that the Products are 100% free of contaminants.

First, Plaintiff's claims rest entirely on his inaccurate contention that PFAS are "ingredients" added to the Products. *See, e.g.*, Compl. ¶ 90 ("Defendant's widespread marketing campaign portraying the Products as containing 'All Natural' ingredients . . . is misleading and deceptive to consumers because the Products ***are made with*** artificial, man-made, and toxic ***ingredients***.") (emphasis added). Plaintiff, however, does not allege that KDP added PFAS to any of the Products, so as to render them an "ingredient" the Products are "made with." Nor can Plaintiff credibly argue that a reasonable consumer would consider PFAS to be ***ingredients*** in juice products. The common meaning of "ingredients" is the "things that are used to make something"[16] – not environmental contaminants like PFAS that have no use and serve no purpose in making a juice product. Likewise, the FDA distinguishes between a product's "ingredients" and other substances that may be incidentally present in "insignificant levels" that "do not have any technical or functional effect in the food." 21 C.F.R. § 101.100(a)(3) (listing exemptions from ingredient labeling requirements). *Richburg* recently dismissed similar PFAS claims for this very reason. 2023 WL 1818561, at *7 (consumers would not consider PFAS to be an "ingredient" in popcorn labeled as containing "100% ingredients from natural sources"). Reasonable consumers simply would not interpret "ingredients" to include incidental, trace-level contaminants that serve no function in the Product and that the FDA does not require manufacturers to include on the Product's label, so "the representation on the packaging is correct as a matter of law." *Id.*

That conclusion is bolstered by precedent from courts in this Circuit that distinguish

---

[16] *See* https://www.collinsdictionary.com/us/dictionary/english/ingredient.

between common environmental contaminants and intentionally-added ingredients.  For example, in *Axon*, the plaintiff alleged that defendant's brand name was deceptive because it used the term "natural" when the product contained trace amounts of an unnatural contaminant, glyphosate.  The court dismissed because no reasonable consumer would consider glyphosate to be an "ingredient":

> Glyphosate, however, is not an 'ingredient' ***added to defendant's products***; rather, it is a substance introduced through the growing process.  ***It is far more misleading to call a product "natural" when the defendant has introduced unnatural ingredients*** than it is to call a product "natural" when it contains trace amounts of a commonly used pesticide introduced early in the production process.

*Axon*, 354 F. Supp. 3d at 183 (emphasis added); *see also Parks v. Ainsworth Pet Nutrition, LLC*, No. 18 CIV. 6936 (LLS), 2020 WL 832863, at *1-2 (S.D.N.Y. Feb. 20, 2020) ("Natural" or "All Natural Ingredients" representation would not mislead a reasonable consumer regarding the presence of trace amounts of residual pesticides in pet food).[17]  Those cases reflect a widely-applicable precedent: reasonable consumers view intentionally-added "ingredients" differently from inadvertent contaminants.  No reasonable consumer would perceive KDP's "All Natural Ingredients" representations to mean that every bottle of every Product is 100% free of ubiquitous environmental contaminants (i.e., PFAS), just like the consumers in *Axon* and *Parks* did not perceive identical representations as guarantees that those products were entirely free of pesticides.

Moreover, KDP's "All Natural Ingredients" representations cannot support Plaintiff's claims because his interpretation of these statements finds no support in the Products' labeling as

---

[17]  Other courts have agreed.  *See, e.g.*, *Hawyuan Yu v. Dr Pepper Snapple Group, Inc.*, No. 18 CV-06664-BLF, 2020 WL 5910071, at *7 (N.D. Cal. Oct. 6, 2020) ("All Natural Ingredients" did not represent that juice products were "free of any trace pesticides whatsoever"); *In re Gen. Mills Glyphosate Litig.*, No. CV 16-2869 (MJD/BRT), 2017 WL 2983877, at *5 (D. Minn. July 12, 2017) ("Plaintiffs have failed to plausibly allege that the statement "Made with 100% Natural Whole Grain Oats" means, or could be interpreted by a reasonable consumer to mean, that there is no trace glyphosate in Nature Valley Products."); *cf. George v. Starbucks Corp.*, No. 19-6185, 2020 WL 6802955 (S.D.N.Y. Nov. 19, 2020), *aff'd*, 857 F. App'x 705 (2d Cir. 2021) (pesticide was "not an artificial dye or flavor" and "[n]o reasonable consumer would understand that statement to convey any information about the company's use or non-use of pesticides").

a whole. "In determining whether a reasonable consumer would have been misled . . . context is crucial." *Warren v. Whole Foods Mkt. Group, Inc.*, 574 F. Supp. 3d 102, 114 (E.D.N.Y. 2021) (quotations omitted). "Courts 'view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Id.* at 115. In context, reasonable consumers would not believe the Products are 100% free of contaminants simply because of the "All Natural Ingredient" representation on the labels. The labeling does not contain any other statement that would contribute to such an unlikely interpretation – notably absent is any statement regarding the presence or absence of chemicals or contaminants (e.g., "free of chemicals," "contaminant-free").[18] A reasonable consumer viewing the labeling as a whole is, therefore, unlikely to reach Plaintiff's far-fetched conclusion. *See Coca-Cola*, 2023 WL 3055196, at *4-5.

Finally, although Plaintiff vaguely alleges that KDP also represented the Products as "safe" and "healthy," those words appear nowhere in the Products' labeling or other materials referenced in the Complaint. Plaintiff cannot base his claims on representations that he does not plausibly allege exist and/or apply to the Products. And, as discussed above, Plaintiff has not plausibly alleged that the Products are "unsafe" or "unhealthy." The Court is not required to accept conclusory and implausible allegations of consumer deception. *See Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021).

### 2) *Plaintiff Fails to Plead an Actionable Omission*

To the extent Plaintiff's claims are based on purported omissions, he has not plausibly alleged a duty to disclose or that the omission would be material to a consumer's purchasing decision. Plaintiff does not and cannot identify any federal or state law or regulation that requires

---

[18] Plaintiff argues that by listing "Filtered Water" in one Product's ingredient list, KDP led consumers to believe that "additional care has been taken to remove any incidental chemicals or impurities." (Compl. ¶ 30). But accurately listing filtered water as an ingredient does not equate to representing that the Product is PFAS-free. Plaintiff does not allege that the Product does not contain filtered water.

a juice manufacturer to disclose the presence of trace levels of environmental contaminants like PFAS, nor does he allege any fiduciary relationship that would give rise to a duty to disclose. In the absence of such allegations, Plaintiff "must allege that the business alone possesses material information that is relevant to the consumer and fails to provide this information." *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 244 (S.D.N.Y. 2022) (quotations omitted); *see also Am. Dev. Group, LLC v. Island Robots of Florida*, No. 17CV3223NGGPK, 2019 WL 5790265, at *7 (E.D.N.Y. Oct. 4, 2019). Other than a single, conclusory statement that "Defendant knew, or at a minimum should have known, that its Products contain PFAS," (Compl. ¶ 57), Plaintiff alleges no facts to suggest that KDP knew that the Products purportedly contain PFAS or that KDP "alone" possessed such knowledge. That will not suffice. *Harris*, 586 F. Supp. 3d at 244 (conclusory assertions insufficient to plead that defendant knew about contamination); *Womack v. EVOL Nutrition Assocs., Inc.*, No. 21-332, 2021 WL 5906340, at *10 (N.D.N.Y. Dec. 14, 2021).

Plaintiff's omission claims also fail because he does not plausibly allege that the trace amounts of PFAS purportedly found in the Products – well below any enforceable regulatory standard, even for drinking water, *see supra* Section II.B – would be "material" to reasonable consumers. Several courts have held that the presence of trace levels of contaminants is not material to consumers where a plaintiff fails to plausibly allege a risk of harm. *See, e.g.*, *Parks*, 2020 WL 832863, at *2 ("The level of glyphosate in the tested Products is negligible and significantly lower than the FDA's limit, which supports a finding that the Products' glyphosate residue is not likely to affect consumer choice."); *Yu*, 2020 WL 5910071, at *6 (dismissing because "Plaintiff does not allege that acetamiprid is present in an unsafe amount, and the amount Plaintiff claims is in the Products is well below the FDA established tolerance").

### 3) *Plaintiff Fails to Plead Causation or Reliance*

Plaintiff also fails to adequately plead that he actually read or relied on any of the

challenged statements or marketing materials before purchasing a Product. To establish the requisite causal connection between an alleged misrepresentation or omission and his alleged injuries for a GBL claim, Plaintiff must allege facts demonstrating that he saw the misleading statements prior to his purchases "and, to the extent he did, where, when and how [he] came to view" the statements. *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018); *see also Devey v. Big Lots, Inc.*, 635 F. Supp. 3d 205, 215 (Oct. 12, 2022) (dismissing "[b]ecause plaintiff's disjointed allegations of label reading and Product purchases at various times and places do not plausibly give rise to the inference that she actually saw and read the Product's label prior to making a specific purchase decision"). Likewise, to state a claim for fraud, Plaintiff must allege with particularity that he "reasonably relied" on an alleged misrepresentation or omission. *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 369 (E.D.N.Y. 2022).

Plaintiff alleges that he "purchased [KDP's] Products numerous times at various retail stores in Nassau County, NY" and "purchased various different favors of the Products, including the Orchard Apple flavor." (Compl. ¶ 91). He separately avers that he "reviewed the labeling, packaging, and marketing materials of ***his Product*** [(singular)], including those set out herein," understood those representations to mean that the "Product [(again, singular)] was safe for use and contained 'All Natural Ingredients,'" and reasonably relied on them "in deciding to purchase the Product." (*Id.* ¶ 92) (emphasis added). Plaintiff confusingly groups all Products together. He does not identify details regarding "where, when and how" he came to view the alleged misrepresentations prior to "making a specific purchasing decision" for any specific Product, or allege whether he even purchased each of the nine Products identified in the Complaint. *Oden*, 330 F. Supp. 3d at 902; *Devey*, 635 F. Supp. 3d at 215. Nor does he allege that he "saw the Product labeling prior to, or in connection with, any particular purchase, at any particular time or place."

*Devey*, 2022 WL 6827447, at \*5.  That is fatal to his claims.

> ### D.    Plaintiff's Claims Are Preempted by Federal Law and Hinge on Issues Within the Primary Jurisdiction of the FDA

Plaintiff's claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FFDCA") because the FDA has already expressly regulated the issue of PFAS contamination in food/beverage products.  The FFDCA provides that "no State . . . may directly or indirectly establish . . . any requirement for . . . labeling of food . . . that is not identical to the requirement[s]" imposed by federal law, including those for ingredient labeling.  21 U.S.C. § 343-1(a).  "'Not identical to' . . . means that the State requirement directly or indirectly imposes obligations" that are "not imposed by" or that "[d]iffer from those specifically imposed by" the statute or FDA regulations.  21 C.F.R. § 100.1(c)(4).  The FDA exempts manufacturers from having to disclose the presence of "[i]ncidental additives that are present in a food at insignificant levels and do not have any technical or functional effect in that food" as part of the ingredient listing.  21 C.F.R. § 101.100(a)(3).  Plaintiff does not (and cannot) allege that the PFAS he claims to have detected "have any technical or functional effect" in fruit juice products, nor does he plausibly allege that PFAS are present in the Products at anything more than "insignificant levels" (if at all).  Plaintiff's claims are preempted because the requirement he seeks to impose under state law would "impose obligations beyond, or different from, what federal law requires."  *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig*., 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008).

Plaintiff's claims also should be dismissed under the doctrine of primary jurisdiction.  This doctrine applies where "enforcement of the claim requires, or is materially aided by, the resolution of threshold issues, usually of a factual nature, which are placed within the special competence of the administrative body."  *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 505 (2d Cir. 2022) (citation omitted).  Four factors – known as the "*Ellis* factors" – govern the application of this doctrine:

(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Ellis v. Tribune Television Co.*, 443 F.3d 71, 82-83 (2d Cir. 2006). Here, the balance of the *Ellis* factors weighs in favor dismissal. Resolving questions regarding what levels and types of PFAS in a fruit juice product are purportedly "harmful" or "material" – and whether a manufacturer has any disclosure obligations related thereto – will require the Court to grapple with complex scientific issues and "technical or policy considerations" outside the conventional experience of judges, but well within the FDA's purview. *See Ellis*, 443 F.3d at 82-83; *In re Beech-Nut Nutrition Co. Baby Food Litig.*, No. 1:21-CV-133, 2023 WL 350818, at *3-4 (N.D.N.Y. Jan. 19, 2023).

Further, this issue is squarely within the FDA's "discretion" and should be left to the "special competence" of that agency. *Reiter v. Cooper*, 507 U.S. 258, 268 (1993). The FDA is authorized to regulate the false or misleading labeling of food under 21 U.S.C. § 343(a)(1), and it is currently evaluating concerns regarding PFAS in food and food packaging. Since 2019, the FDA has optimized and extended its PFAS testing methods, tested food samples, conducted health assessments for individual PFAS, and authorized certain PFAS for use in specific food contact applications. (*See* Ex. 9).[19] The FDA is still testing consumer food samples and has advised that its "conclusions regarding the potential health risks of exposure to detected PFAS may change" as the science evolves. (*Id.*) The FDA's determinations regarding the types and levels of PFAS that may be harmful to consumers would materially aid the Court in resolving these claims.

Finally, there is a strong likelihood of inconsistent rulings. This is one of several consumer

---

[19] *Per- and Polyfluoroalkyl Substances (PFAS)*, FDA, available at: https://www.fda.gov/food/environmental-contaminants-food/and-polyfluoroalkyl-substances-pfas, is attached as Exhibit 8 to the Marinaccio Declaration. This document is judicially noticeable. *See supra* n.5.

protection lawsuits filed throughout the country against beverage manufacturers alleging failure to disclose trace PFAS contamination.[20] It should be dismissed "until the FDA offers guidance at the federal level . . . to avoid a patchwork of decisions that vary by location, court, manufacturer, and product, resulting in different labeling standards for substantially similar . . . products produced by different manufacturers." *Beech-Nut Nutrition Co.*, 2023 WL 350818, at *4.

### E. Certain Claims Fail for Additional, Independent Reasons

#### 1) *Magnuson-Moss Warranty Act*

Plaintiff's MMWA claim fails because he has not plausibly alleged an underlying breach of warranty. *See Catalano v. MarineMax*, 590 F. Supp. 3d 487, 510 (E.D.N.Y. 2022). His express warranty claim is deficient because KDP did not warrant that the Products are PFAS-free and because product descriptions such as "all natural" do not meet the MMWA's definition of a "written warranty." *See In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013); *cf. Trisvan v. Burger King Corp.*, No. 19-CV-6396 (MKB), 2021 WL 1193531, at *6 (E.D.N.Y. Mar. 30, 2021) (Brodie, J.); *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 302 (S.D.N.Y. 2022). Plaintiff's implied warranty theory fails because he has not explained how the purported presence of PFAS renders the Products "unmerchantable" or unfit for their ordinary purpose, *i.e.*, as a fruit juice, and because he has not alleged privity, *i.e.*, that he was an intended beneficiary of a contract between KDP and the undisclosed retailer from which he purchased the Products. *See Brown*, 2023 WL 2691581, at *5.

Plaintiff's MMWA claim also must be dismissed because the Complaint does not name 100 plaintiffs. *See Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020); *Smith v.*

---

[20] *See, e.g.*, *Hernandez v. The Wonderful Company LLC*, No. 1:23-cv-1242 (S.D.N.Y. Feb. 14, 2023); *Bedson v. BioSteel Sports Nutrition Inc.*, No. 1:23-cv-620 (E.D.N.Y. Jan. 27, 2023); *Lurenz v. The Coca-Cola Company*, No. 7:22-cv-10941 (S.D.N.Y. Dec. 28, 2022); *Toribio v. The Kraft Heinz Company*, No. 1:22-cv-6639 (N.D. Ill. Nov. 29, 2022).

*Adidas Am., Inc.*, No. 6:22-CV-788 (BKS/ML), 2023 WL 5672576, at *4 (N.D.N.Y. Sept. 1, 2023); *Smith v. Abbott Lab'ys Inc.*, No. 20-CV-5684(EK)(MMH), 2023 WL 6121798, at *3 (E.D.N.Y. Sept. 19, 2023); *Bayne v. Target Corp.*, 630 F. Supp. 3d 544, 551-52 (S.D.N.Y. 2022).

### 2) Fraud and Constructive Fraud

Plaintiff's generalized allegations regarding scienter and intent (*e.g.*, Compl. ¶¶ 6, 106) are insufficient. *See Chung*, 2022 WL 2657350, at *19 (E.D.N.Y. July 8, 2022) (allegations of generalized motive to "increase sales" insufficient); *Sanders v. WB Kirby Hill LLC*, No. CV 16-4596, 2017 WL 5495365, at *6 (E.D.N.Y. Nov. 14, 2017); *In re Frito-Lay*, 2013 WL 4647512, at *25. Plaintiff's constructive fraud claim also fails because he does not allege a confidential relationship. *See Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 509, 520 (W.D.N.Y. 2007).

### 3) Unjust Enrichment

"Courts will routinely dismiss an unjust enrichment claim that simply duplicates, or replaces, a conventional contract or tort claim." *Coca-Cola*, 2023 WL 3055196, at *10. Plaintiff's unjust enrichment claim arises out of the same alleged misrepresentations and omissions as his other claims. (Compl. ¶ 202). Although he purports to assert this claim "in the alternative," (Compl., Count VII Header), unjust enrichment is not a "catchall cause of action to be used when others fail." *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 808 (S.D.N.Y. 2021); *Bynum v. Family Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 316 (S.D.N.Y. 2022). It should be dismissed.

### F.     In the Alternative, the Court Should Dismiss the Nationwide Class Allegations

Alternatively, the Court should at least dismiss Plaintiff's nationwide class allegations because it lacks personal jurisdiction over KDP with respect to claims based on sales made outside of New York. In *Bristol-Myers Squibb Co. v. Super. Ct.*, hundreds of non-California residents filed a mass action in California alleging injuries caused by the drug Plavix. 137 S. Ct. 1773, 1777

(2017). The Supreme Court held that "nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1776.

Courts have applied *Bristol-Myers*' reasoning to nationwide class actions and dismissed out-of-state plaintiffs' claims for lack of personal jurisdiction.[21] Others have declined to do so, but "[t]he constitutional requirements of due process do[] not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case." *In re Dental Supplies Antitrust Litig.*, No. 16CIV696BMCGRB, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017); *see also Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1035 (S.D. Cal. 2020). Plaintiff (incorrectly) alleges that KDP sold Products in New York, but even if it were true that would not justify subjecting KDP to the burden of defending claims here that have nothing to do with New York.

## IV.   CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice.

---

[21] *See, e.g.*, *Chizniak v. CertainTeed Corp.*, No. 1:17-CV-1075 (FJS) (ATB), 2020 WL 495129, at *5 (N.D.N.Y. Jan. 30, 2020); *Gazzillo v. Ply Gem Indus., Inc.*, No. 117CV1077MADCFH, 2018 WL 5253050, at *7 (N.D.N.Y. Oct. 22, 2018); *Chufen Chen v. Dunkin' Brands, Inc.*, No. 17CV3808CBARER, 2018 WL 9346682, at *5 (E.D.N.Y. Sept. 17, 2018), *aff'd*, 954 F.3d 492 (2d Cir. 2020).

Dated: November 6, 2023

By: _/s/ Pieter Van Tol_

Pieter Van Tol
**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, NY 10017
Telephone: +1 212 909 0661
Facsimile: +1 212 918 3100
pieter.vantol@hoganlovells.com


Lauren S. Colton (*Pro Hac Vice*)
Marc A. Marinaccio (*Pro Hac Vice*)
**HOGAN LOVELLS US LLP**
100 International Drive, Suite 2000
Baltimore, MD 21202
Telephone: +1 410 659 2700
Facsimile: +1 410 659 2701
lauren.colton@hoganlovells.com
marc.marinaccio@hoganlovells.com

*Attorneys for Defendant Keurig Dr Pepper Inc.*