UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

TIMOTHY WALKER,

                        Plaintiff,

                v.

KEURIG DR PEPPER INC.,

                        Defendant.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
22-CV-5557 (MKB)

MARGO K. BRODIE, United States District Judge:

        Plaintiff Timothy Walker commenced the above-captioned action on September 16,

2022, against Defendant Keurig Dr Pepper Inc. ("Keurig"), alleging class action claims on behalf

of himself and putative class members for violations of the Magnuson-Moss Warranty Act, 15

U.S.C. § 2301 *et seq.*, and the New York Deceptive Trade Practices Act, New York Gen. Bus.

Law §§ 349 and 350 *et seq.*, breach of express warranty, fraud, constructive fraud, and unjust

enrichment, based on allegations that Defendant mislabeled certain of its juice drink products as

"all natural" even though they contain per- and polyfluoroalkyl substances ("PFAS"), a category

of synthetic, man-made chemicals.  (Compl., Docket Entry No. 1.)  On January 17, 2023,

Plaintiff filed an Amended Complaint asserting the same claims.  (Am. Compl., Docket Entry

No. 10.)

        On December 18, 2023, Defendant moved to dismiss the Amended Complaint for lack of

subject-matter jurisdiction pursuant to Rule 12(b)(1), lack of personal jurisdiction pursuant to

Rule 12(b)(2), and failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, and Plaintiff opposed the motion.[1]  For the reasons explained below, the Court grants

Defendant's motion to dismiss.

## I.  Background

### a.  Factual background

Plaintiff is a resident of East Rockaway, New York, and a citizen of New York.[2]  (Am.

Compl. ¶ 11.)  Defendant is a publicly-traded multinational beverage company that owns,

formulates, produces, advertises, distributes, and sells more than thirty brands of beverages

globally, and is incorporated in Delaware and headquartered in Burlington, Massachusetts.  (*Id.*

¶¶ 12–13.)

Defendant sells juice drinks as part of its Nantucket Nectars and Snapple product lines

(collectively, the "Products").  (*Id.* ¶¶ 1, 20.)  Defendant labels the Nantucket Nectars Products

as having "all natural ingredients," (*id.* ¶¶ 4–7, 24–28), and labels the Snapple Products as "all

natural" and previously used a label stating "Made From the Best Stuff on Earth," (*id.* ¶¶ 25–27).

The ingredient lists of the Products include "filtered water" and other natural ingredients.  (*Id.*

¶¶ 29–30.)

Plaintiff alleges that the Products contain PFAS, a category of synthetic, man-made

chemicals harmful to humans and the environment.  (*Id.* ¶¶ 2, 32–33, 36–42.)  PFAS are

---

[1]  (Def.'s Mot. to Dismiss ("Def.'s Mot."), Docket Entry No. 26; Def.'s Mem. in Supp. of
Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 26-1; Pl.'s Mem. in Opp'n to Def.'s Mot. ("Pl.'s
Opp'n"), Docket Entry No. 28; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket
Entry No. 27.)  After the substantive briefing was filed, Defendant also filed four separate
notices of supplemental authority, notifying the Court of four recent decisions Defendant asserts
are relevant to the Court's determination of whether Plaintiff has Article III standing to pursue
his claims.  (First Notice of Supp. Authority ("Supp. 1"), Docket Entry No. 30; Second Notice of
Supp. Authority ("Supp. 2"), Docket Entry No. 31; Third Notice of Supp. Authority ("Supp. 3"),
Docket Entry No. 34; Fourth Notice of Supp. Authority ("Supp. 4"), Docket Entry No. 35.)

[2]  The Court assumes the truth of the factual allegations in the Amended Complaint for
the purpose of deciding Defendant's motion.

sometimes called "forever chemicals" because they bioaccumulate, or build up in the body over time.  (*Id.* ¶ 34.)  Plaintiff contends that because PFAS are by definition man-made, they are not considered "natural," (*id.* ¶ 33), and therefore, the Products should not be labeled as "all natural," (*id.* ¶¶ 45–46, 90).

Plaintiff contends that "[d]uring the applicable statute of limitations period," he purchased the "Products that contained PFAS" from various retail stores in Nassau County, New York and consumed them.  (*Id.* ¶ 91.)  Plaintiff does not state which specific flavors he purchased, other than to note that he "purchased various different flavors . . . including the Orchard Apple flavor."  (*Id.*)

Plaintiff sought independent third-party testing of the Products[3] in an effort to determine whether the Products contained PFAS.  (*Id.* ¶ 47.)  Plaintiff alleges that the independent testing was "conducted in accordance with accepted industry standards," and that it "detected material levels of numerous PFAS in the Products, including concerning levels of Perfluorooctanoic acid ("PFOA") and Perfluorooctane sulfonic acid ("PFOS")," both of which are types of PFAS.  (*Id.* ¶¶ 48–50.)  Plaintiff does not allege the specific amount of PFAS found in the Products, but alleges that his testing revealed that the Products "all contain PFAS in amounts that dramatically exceed" the recommended limit from the Environmental Protection Agency ("EPA") for PFOA and PFOS exposure in drinking water, and that "some Products contain[] PFOA and PFOS at levels more than 100 times the EPA's recommended levels."  (*Id.* ¶¶ 54–55 (emphasis omitted).)  Plaintiff also alleges that had he known that the Products contained PFAS, he and the putative class members would either not have purchased the Products or would have paid less for them.  (*Id.* ¶¶ 80, 82.)

---

[3]  Plaintiff does not allege that he had the specific drinks he purchased tested.

3

## II.  Discussion

### a.   Standard of review

A district court may dismiss an action for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it." *Huntress v. United States*, 810 F. App'x 74, 75 (2d Cir. 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova*, 201 F.3d at 113); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (per curiam) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). "'[C]ourt[s] must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (first quoting *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); and then quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)), *aff'd*, 561 U.S. 247 (2010)).  Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113); *see also Suarez v. Mosaic Sales Sols. US Operating Co.*, 720 F. App'x 52, 53 (2d Cir. 2018) ("[T]he party asserting subject matter jurisdiction must demonstrate its existence by a preponderance of the evidence." (citing *Morrison*, 547 F.3d at 170)); *Clayton v. United States*, No. 18-CV-5867, 2020 WL 1545542, at *3 (E.D.N.Y. Mar. 31, 2020) (quoting *Tandon*, 752 F.3d at 243); *Fed. Deposit Ins. Corp. v. Bank of N.Y. Mellon*, 369 F. Supp. 3d 547, 552 (S.D.N.Y. 2019) (quoting *Tandon*, 752 F.3d at 243).

### b.   Article III standing

Defendant argues that Plaintiff does not have Article III standing because he has not plausibly alleged that he himself suffered an injury because of a defect in Defendant's Products. (Def.'s Mem. 8–9.)  In support, Defendant argues that Plaintiff has failed to adequately allege that: (1) any of Defendant's Products contain PFAS because he does not plausibly allege that Defendant's Products actually contain PFAS, or that Defendant intentionally added PFAS to the Products, (*id.* at 9); (2) any of the products Plaintiff allegedly purchased contain PFAS, because the Amended Complaint does not provide "key testing details" such as what Products were tested, when or where the testing occurred, which lab conducted the testing, what standards were used, which specific PFAS analytes were detected, the specific levels of PFAS detected, and why those levels are material and/or concerning, (*id.*); or (3) he suffered an economic injury because he does not allege sufficient facts to establish that he did not obtain the full value of the Products he purchased or that he paid a premium, (*id.* at 12–14.)  Defendant also argues that Plaintiff lacks standing to assert claims on behalf of class members for Products he did not purchase.  (*Id.* at 11–12.)

Plaintiff argues that he has sufficiently alleged standing because he (1) tested all of the Products at issue in the litigation, and that testing revealed that the PFOA and PFOS present in some samples were detected in quantities more than 100 times the EPA's current lifetime health advisory levels, (Pl.'s Opp'n 9–10), and (2) he does not need to allege that he actually tested the Products he purchased, but rather the allegations that the same defects existed in nine different samples of Defendant's Products raise a plausible inference that the products were systematically contaminated such that Plaintiff also likely purchased a misbranded Product, (*id.* at 10–11).

"The Constitution limits federal courts to deciding 'Cases' and 'Controversies.'"  *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 295 (2022) (quoting U.S. Const. art. III, § 2).  "'Standing to

sue is a doctrine' that 'limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.'" *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 183–84 (2d Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)); *see also Packer ex rel. 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC*, 105 F.4th 46, 51 (2d Cir. 2024) ("Article III of the Constitution requires that plaintiffs establish standing to sue in federal court." (footnote omitted)).  "To establish Article III standing, 'a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" *Liu v. Democratic Nat'l Comm.*, No. 21-3021, 2022 WL 4372587, at *1 (2d Cir. Sept. 22, 2022) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)); *see also Packer*, 105 F.4th at 51 (same).  "An injury in fact must be 'particularized,' and it must be 'concrete.'" *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022) (quoting *Spokeo, Inc.*, 578 U.S. at 340).

   "[S]tanding is required for subject matter jurisdiction." *James v. Willis*, No. 21-CV-501, 2022 WL 481812, at *1 (2d Cir. Feb. 17, 2022) (citing *Strubel v. Comenity Bank*, 842 F.3d 181, 187 (2d Cir. 2016)).  "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)); *see also Otrompke v. First Dep't Comm. on Character & Fitness*, No. 20-CV-4107, 2021 WL 5764221, at *1 (2d Cir. Dec. 6, 2021) ("A district court lacks jurisdiction 'when . . . the plaintiff lacks constitutional standing to bring the action.'" (quoting *Cortlandt St. Recovery Corp*, 790 F.3d at 417)); *see also Citizens United to Protect Our Neighborhoods v. Village of Chestnut Ridge*, 98 F.4th 386, 391 (2d Cir. 2024) ("A district court properly dismisses an action for lack of subject-matter jurisdiction under Rule 12(b)(1) 'if the

6

court lacks the statutory or constitutional power to adjudicate it, such as when the plaintiff[s] lack[] constitutional standing to bring the action." (alterations in original) (quoting *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021))). "Before deciding any case on the merits, a district court must determine that it has subject matter jurisdiction over the matter. Therefore, for a case to proceed, the party invoking federal jurisdiction must plausibly plead that it has standing to sue." *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 205–06 (2d. Cir. 2019) (first citing *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014); then citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016)); *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006) ("[S]ubject-matter jurisdiction must be considered by the court on its own motion, even if no party raises an objection."); *Pan v. Whitaker*, 351 F. Supp. 3d 246, 249–50 (E.D.N.Y. 2019) ("[F]ederal courts have a continuing and independent duty to ensure that they possess subject matter jurisdiction, and must dismiss a case when they find subject matter jurisdiction lacking.").

To establish injury, a plaintiff may show a "benefit-of-the-bargain" or a "price-premium" theory, under which a plaintiff argues that they would not have purchased a product or would not have paid the same amount for it if not for the defendant's alleged deception. *See Eidelman v. Sun Prods. Corp.*, No. 21-1046, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022) ("One method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a 'price premium' — that is, as a result of the defendant's deception, the plaintiff paid more for a product than he otherwise would have." (citing *Orlander v. Staples, Inc.*, 802 F.2d 289, 302 (2d Cir. 2015))); *John v. Whole Foods Mkt. Grp.*, 858 F.3d 732, 736 (2d Cir. 2017) ("[O]verpaying for a product results in a financial loss constituting a particularized and concrete injury in fact." (citing *Carter*, 822 F.3d at 55)); *Onaka v. Shiseido Ams. Corp.*, No. 21-CV-10665, 2023 WL 2663877, at *3 (S.D.N.Y. Mar. 28, 2023) (*Onaka I*) ("[I]n the Second Circuit,

'an allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing." (quoting *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021)).

While a plaintiff need not show that the actual product they purchased was mislabeled, the plaintiff must "generally allege facts that, accepted as true, make his injury plausible." *John*, 858 F.3d at 737 (citation omitted); *see also Hernandez v. Wonderful Co.*, No. 23-CV-1242, 2023 WL 9022844, at *5 (S.D.N.Y. Dec. 29, 2023) ("In consumer protection cases . . . Article III standing will be found [where] the complaint 'alleges facts demonstrating it is at least plausible that a plaintiff purchased a misbranded product.'" (quoting *Onaka I*, 2023 WL 2663877, at *4)). Where a plaintiff has not alleged that the products he actually purchased were misbranded, he can still meet the requirements for Article III standing by (1) alleging that a third-party investigation has revealed defects in the same line of such products as those he purchased, or (2) alleging a broad systematic fraud in a market in which the plaintiff regularly transacts. *See, e.g.*, *John*, 858 F.3d at 736–38 (concluding that the plaintiff had adequately alleged facts that made his alleged injury plausible and therefore had established standing where he alleged that 89% of the pre-packaged products tested were mislabeled, the testing process concluded that the mislabeling was systematic and routine, and the plaintiff had regularly purchased the products at issue throughout the relevant period); *Clinger v. Edgewell Personal Care Brands, LLC*, No. 21-CV-1040, 2023 WL 2477499, at *3 (D. Conn. Mar. 13, 2023) ("[A] product defect may be plausibly inferred from the fact that a third-party investigation has revealed defects in the same line of such products." (citing *John*, 858 F.3d at 736–38)); *Hernandez*, 2023 WL 9022844, at *5 (noting that to establish Article III standing, "a [p]laintiff could allege that her purchased products actually were misbranded, that a third-party investigation has revealed defects in the same line of such products as those she purchased, or . . . a broad systematic fraud in a market in

which [plaintiffs] regularly transact" (second alteration in original) (internal quotation marks omitted)).

Plaintiff has not alleged that he suffered an injury sufficient to establish Article III standing.[4]  Plaintiff also does not allege facts sufficient to raise a plausible inference that at least one of the Products he purchased contained PFAS.  Plaintiff does not allege when the Products were tested or when he purchased the Products such that it can support an inference that he purchased a contaminated Product.  He states only that he purchased and consumed the Products "[d]uring the applicable statute of limitations period" and "during the class period," neither of which he defines with a specific time frame.  (Am. Compl. ¶ 91.)  He similarly does not specify when the independent testing of the Products was performed.  (*Id.* ¶¶ 47–56.)  The Court cannot infer that it is plausible that Plaintiff purchased and consumed Products containing PFAS because the Complaint does not allege that the independent testing was performed reasonably near in time to Plaintiff's own actual purchases of the Product.  *See, e.g.*, *Onaka v. Shiseido Ams. Corp.*, No. 21-CV-10665, 2024 WL 1177976, at *3 (S.D.N.Y. Mar. 19, 2024) (*Onaka II*) (concluding that the plaintiff did not have standing in part because the complaint "fail[ed] to establish that [the plaintiffs] tested the [p]roducts near in time to [the plaintiffs'] purchases"); *Kell v. Lily's Sweets, LLC*, No. 23-CV-147, 2024 WL 1116651, at *4 (S.D.N.Y. Mar. 13, 2024) (concluding that the plaintiff did not have standing where, in part, "the [c]omplaint lack[ed] any factual allegations about whether [the products purchased by the plaintiff] and the samples tested . . . were purchased in similar circumstances (for instance, whether she purchased them at a similar time and place)"); *Brown v. Coty, Inc.*, No. 22-CV-2696, 2024 WL 894965, at *3

---

[4]  Plaintiff does not allege that he tested the actual products he purchased.  (*See* Pl.'s Opp'n 9 ("Plaintiff is not required to prove the accuracy or rigor of the methodology used in his testing results, nor does he need to test his individual products."); *id.* at 10 ("[T]he fact that the plaintiff[] did not actually test the products that [he] purchased does not mean that [he] lack[s] standing." (first alteration added) (quoting *Clinger*, 2023 WL 2477499, at *10)).)

(S.D.N.Y. Mar. 1, 2024) (noting that to establish standing, "[i]ndependent testing of a product line must be 'reasonably near in time' to [the plaintiff's] own purchases,"); *cf. John*, 858 F.3d at 735 (concluding that the plaintiff had standing in part because he had alleged that he "regularly purchased [the products] throughout the relevant period" of mislabeling).

Although Plaintiff asserts that he has alleged facts supporting a conclusion that the Products were "systematically contaminated," (Pl.'s Opp'n 9–10), the factual allegations regarding the independent testing are too vague to conclude that Plaintiff plausibly overpaid for at least one purchase.  Plaintiff alleges generally that his independent testing revealed "the Products all contain PFAS in amounts that dramatically exceed" the EPA recommendations for PFOA and PFOS exposure in drinking water, and that "some Products contain[] PFOA and PFOS at levels more than 100 times the EPA's recommended levels" for drinking water.  (Am. Compl. ¶¶ 49, 54–55.)  Although Plaintiff seems to allege that all of the Products were tested, he does not allege how many of each type of Product was tested, when they were tested, or which Products are within the bucket of the "some Products" that allegedly contained PFOA and PFOS at levels more than 100 times the EPA's recommended levels for drinking water.  (*Id.* ¶¶ 47–56.) Plaintiff also alleges only that he "purchased Defendant's Products numerous times," but does not specify which types or flavors of the Products he purchased, other than to say that his purchases "includ[ed] the Orchard Apple flavor."  (*Id.* ¶ 91.)  Without additional information about the testing performed or the actual Products purchased by Plaintiff, the Court cannot conclude that it is plausible that Plaintiff purchased a contaminated Product.  *See, e.g.*, *Lurenz v. Coca-Cola Co.*, No. 22-CV-10941, 2024 WL 2943834, at *3 (S.D.N.Y. June 10, 2024) (concluding that even though the plaintiff alleged that both the testing and his purchases of the relevant products occurred in July of 2022, he did not establish that the presence of PFAS in the products was "so widespread as to render it plausible that" he purchased a mislabeled product,

10

because he "relie[d] only on a single allegation of testing and cite[d] no studies or articles indicating that the [p]roduct generally contain[ed] PFAS," and "[w]ithout specific facts concerning the third-party testing forming the basis of his allegations that the [p]roduct contain[ed] PFAS chemicals," the court could not conclude that the presence of PFAS in the product that the plaintiff purchased "was anything more than a sheer possibility" (internal quotation marks and citations omitted)); *Hernandez*, 2023 WL 9022844, at *6 (concluding the plaintiff did not have standing where she "ma[de] no allegations sufficient to plausibly show that all or substantially all of the [p]roduct contains PFAS" because she "neither state[d] how may bottles of the [p]roduct she purchased or from where, nor how many were tested and in what manner"). Accordingly, the Amended Complaint does not contain sufficient facts to conclude that Plaintiff has Article III standing, and the Court therefore grants Defendant's motion to dismiss and dismisses the Amended Complaint without prejudice for lack of subject-matter jurisdiction.[5]

### c. Leave to amend

Plaintiff argues that, if necessary, the Court should grant him leave to amend the Amended Complaint. (Pl.'s Opp'n 24–25.)

Defendant argues that Plaintiff should not be granted leave to amend because he has already amended his complaint once, and does not state how he can plead a viable claim. (Def.'s Reply 10.)

The Court grants Plaintiff's request for leave to file a second amended complaint. *See, e.g., Fraser v. City of New York*, No. 20-CV-5741, 2022 WL 3045524, at *10 (E.D.N.Y. Aug. 1, 2022) (permitting plaintiff leave to file a second amended complaint where "the record d[id] not

---

[5] Because the Court dismisses the Amended Complaint for lack of subject-matter jurisdiction, it declines to address Defendant's remaining arguments.

indicate that she ha[d] repeatedly submitted deficient pleadings"); *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (noting that Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party'" (second and third alterations in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008))); *see also Meyer v. Seidel*, 89 F.4th 117, 139 (2d Cir. 2023) (noting that leave to amend should be freely given).  Because leave to amend should be freely given under Rule 15 of the Federal Rules of Civil Procedure, the Court grants Plaintiff leave to file a second amended complaint.

### III. Conclusion

For the reasons stated above, the Court grants Defendant's motion to dismiss the Amended Complaint without prejudice and grants Plaintiff leave to file a second amended complaint.

Dated: July 16, 2024
       Brooklyn, New York

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge